IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RUGH A. MASON and SHERRY L. MASON, husband and wife, | ) ) | |
| Plaintiffs, | ) ) | |
| vs | ) ) | Civil Action No. 12-369 Judge Conti |
| RANGE RESOURCES-APPALACHIA, LLC and NISOURCE ENERGY VENTURES, LLC, | ) ) ) | Magistrate Judge Mitchell |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

I.  Recommendation

It is respectfully recommended that the motion to dismiss Count I of the complaint and to strike Plaintiffs' claims for attorney's fees (ECF No. 5), filed on behalf of Defendant Range Resources-Appalachia, LLC, be granted with respect to the request to strike Plaintiffs' claims for attorney's fees and denied in all other respects.

II.  Report

Plaintiffs, Rugh A. Mason and his wife, Sherry L. Mason, bring this action against Defendants, Range Resources-Appalachia, LLC ("Range Resources") and NiSource Energy Ventures, LLC ("NEVCO") arising out of the attempts by Defendants to obtain production rights for the natural gas located under their land. Specifically, Plaintiffs seek a declaration that they (and not the Defendants) own all drilling and production rights to the natural gas associated with their land and they allege that Range Resources tortiously interfered with Rugh Mason's relationship with his employer after he refused to amend and ratify an old gas lease or enter into a new lease with Range Resources for gas production rights.

Facts

Rugh Mason and his wife Sherry own 151 acres of land located at 99 Buck Run Road, Claysville, Donegal Township, Washington County, Pennsylvania that is part of a 14,000 acre underground natural gas storage area operated by Columbia Gas (the "Donegal Storage Field"). (Compl. ¶¶ 5-6, 9.) Columbia Gas stores natural gas in a sandstone formation under the Masons' property pursuant to a 1961 oil and gas lease, to which it is a successor in interest. The lease also granted certain rights to drill for and produce natural gas from the Masons' land. Plaintiffs allege, however, that no person or entity has ever attempted to drill for or produce oil or gas under the terms of the lease in the 50 years since the lease was signed. (Compl. ¶¶ 7-11 & Ex. A.)

In 2005, Columbia Gas purported to sublease to Range Resources whatever gas development and production rights it had in the Donegal Storage Field, including any rights that might have continued to exist under the 1961 lease. (Compl. ¶ 13 & Ex. B.) On March 23, 2007, Range Resources entered into a new oil and gas lease with the Masons under which Range Resources leased from the Masons the oil and gas under their land for the purposes of drilling, operating for, producing, removing and marketing oil, gas and coalbed methane gas for a period of three years, but Range Resources did not perform any oil or gas drilling or production activity on the Masons' land during the term of this sublease, which expired in March 2010. (Compl. ¶¶ 16-17 & Ex. C.)

On December 9, 2009, Columbia Gas assigned to NEVCO all of its right, title and interest as sublessor under the Range Resources 2005 sublease. On April 13, 2010, NEVCO sublet to Range Resources the production rights, if any, possessed by NEVCO for all formations below the top of the Rhinestreet formation in the Donegal Storage Field pursuant to the gas

2

storage leases, including the 1961 lease. Plaintiffs allege that, since 1961, no entity has engaged in any oil or gas drilling or production activity on their land, nor has any entity paid them any consideration for any oil and gas production rights that could still exist under the 1961 lease. (Compl. ¶¶ 18-21 & Ex. D.)

From time to time Range Resources has asked the Masons either to amend and ratify the 1961 lease or to re-lese their land to Range Resources, but the Masons have refused. In 2011, Rugh Mason also told other landowners in the Donegal Storage Field that the old gas storage leases in his view did not hold the production rights and he urged other landowners not to enter into the lease modifications sought by Range Resources. He stated that the landowners could likely obtain betters terms for the gas production rights. (Compl. ¶¶ 24-25.)

Rugh Mason was employed by Advanced Oilfield Services, Inc., which provides gas well services to Range Resources at gas wells drilled by Range Resources in and near the Donegal Storage Field. His job as a roustabout with job safety responsibilities required him to visit various Range Resources gas well drill sites in the vicinity of the Donegal Storage Field. When Range Resources learned about this, it ordered Advanced Oilfield Services to forbid Mason from having access to any of Range Resources' gas well sites. When Mason reported to work on January 3, 2012, Advanced Oilfield Services informed him about Range Resources' demands and offered him a significant demotion, which he did not accept, and therefore Advanced Oilfield Services terminated his employment as of that date. (Compl. ¶¶ 26-29.)

Procedural History

On February 27, 2012, Plaintiffs filed a complaint in the Court of Common Pleas of Washington County, Pennsylvania. Count I alleges that Range Resources tortiously interfered with Rugh Mason's relationship with his employer after he refused to amend and ratify the 1961

3

gas lease or to lease new gas production rights to Range Resources. Count II seeks a declaration that Plaintiffs own all drilling and production rights to the natural gas associated with their land and that no such rights are possessed by Range Resources or NEVCO.

On March 26, 2012, Defendants filed a notice of removal, asserting jurisdiction based on diversity of citizenship in that Plaintiffs are Pennsylvania citizens; Range Resources is a limited liability company whose members are Range Resources—Pine Mountain, Inc. and Range Production Co., both Delaware corporations with a principal place of business in Fort Worth, Texas; NEVCO is a Delaware limited liability company whose sole member is Columbia Energy Group, a Delaware corporation with a principal place of business in Columbus, Ohio; and the amount in controversy, excluding interest and costs, exceeds the sum of $75,000.00 (Notice of Removal ¶¶ 10-21 & Exs. C, D, E.)

On April 2, 2012, Range Resources filed a motion to dismiss Count I of the complaint and to strike Plaintiffs' request for attorney's fees. On April 24, 2012, Plaintiffs filed a response and brief in opposition (ECF Nos. 10-11), in which they concede to the striking of their request for attorney's fees but argue that Count I should not be dismissed. Range Resources filed a reply brief on May 2, 2012 (ECF No. 16).[1]

Standard of Review

The Supreme Court recently issued two decisions that pertain to the standard of review for a motion to dismiss for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). "[W]ithout some

---

[1] On April 2, 2012, NEVCO filed an answer to the complaint (ECF No. 7).

factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 129 S.Ct. at 1949 (citations omitted). Mere "possibilities" of misconduct are insufficient. Id. at 1949-50. District courts are required to engage in a two part inquiry:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions…. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show the plaintiff has a "plausible claim for relief." … In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

In Count I, Plaintiffs allege that Range Resources interfered with Rugh Mason's contractual relationship with his employer. Range Resources contends that the allegations are insufficient to state a claim because Mason had only an at-will employment relationship with Advanced Oilfield Services and therefore they could not have tortiously interfered with it. Plaintiffs respond that, even though Mason's relationship with his employer was at-will, case law holds that a third party may not tortiously interfere with that relationship and may be held liable for doing so.

Determining State Law

The Court of Appeals has explained that:

> A federal court under Erie [R.R. Co. v. Tompkins, 304 U.S. 64 (1938)] is bound to follow state law as announced by the highest state court. "If the highest

5

court has not spoken to the issue, we can garner assistance from the decisions of the state's intermediate appellate courts in predicting how the state's highest court would rule." Mosley v. Wilson, 102 F.3d 85, 92 (3d Cir. 1996). Although state intermediate appellate decisions are not automatically controlling, see Paoletto v. Beech Aircraft Corp., 464 F.2d 976 (3d Cir. 1972), the Supreme Court in Commissioner of Internal Revenue v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967), summarized current practice as follows: "even in diversity cases this Court has further held that while the decrees of lower state courts should be attributed some weight the decision is not controlling where the highest court of the State has not spoken on the point." Id. at 465, 87 S.Ct. 1776 (internal quotation marks and citations omitted). In West v. A.T. & T. Co., 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940), the Supreme Court further held that "an intermediate appellate state court ... is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."

Edwards v. HOVENSA, LLC, 497 F.3d 355, 361 (3d Cir. 2007). "Additionally, when a state's highest court denies review, the policy reasons for following an intermediate appellate court decision (absent compelling evidence to the contrary) are strengthened." Sheridan v. NGK Metals Corp., 609 F.3d 239, 254 (3d Cir. 2010) (citation omitted).

In addition to state appellate court decisions, a federal court attempting to predict state law should also look to "federal courts interpreting that state law … other state supreme courts that have addressed the issue … analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state could decide the issue at hand." Spence v. The ESAB Group, Inc., 623 F.3d 212, 216-17 (3d Cir. 2010) (citation omitted).

Tortious Interference With Contractual Relations

The Restatement of Torts provides that:

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

6

Restatement (Second) of Torts § 766 (1979). Pennsylvania has expressly adopted this section of the Restatement. See Adler, Barish, Daniels, Levin & Creskoff v. Epstein, 393 A.2d 1175, 1183 (Pa. 1978).[2]

The Court of Appeals has stated that:

> Under Pennsylvania law, the elements of a cause of action for intentional interference with a contractual relation, whether existing or prospective, are:
>
> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the defendant's conduct.

Crivelli v. General Motors Corp., 215 F.3d 386, 394 (3d Cir. 2000) (citing Strickland v. University of Scranton, 700 A.2d 979, 985 (Pa. Super. 1997)).

Thus, neither the Restatement itself nor the elements of the tort under Pennsylvania law limit its application to contracts of a certain kind, nor does either source indicate that an at-will contract is excluded from the coverage of § 766. Moreover, comment g to the section states that:

> A similar situation exists with a contract that, by its terms or otherwise, permits the third person to terminate the agreement at will. Until he has so terminated it, the contract is valid and subsisting, and the defendant may not interfere with it. The fact that the contract is terminable at will, however, is to be taken into account in determining the damages that the plaintiff has suffered by reason of its breach.
>
> One's interest in a contract terminable at will is primarily an interest in future relations between the parties, and he has no legal assurance of them. For this reason, an interference with this interest is closely analogous to interference with prospective contractual relations.

Restatement (Second) of Torts § 766 (comment g). In addition, the Restatement indicates that

---

[2] "The Adler, Barish court used language from the Restatement (Second) of Torts § 766 (Tent. Draft No. 23, 1977). However, the final restatement is the same in substance." Nathanson v. Medical College of Pa., 926 F.2d 1368, 1388 n.14 (3d Cir. 1991) (citation omitted).

"there is a general duty not to interfere intentionally with another's reasonable business expectancies of trade with third persons, whether or not they are secured by contract….." Restatement (Second) of Torts § 766 (comment b).

Superior Court Decisions

Shortly after the Pennsylvania Supreme Court adopted § 766 in Adler, Barish in 1978, the Superior Court stated that "an action for intentional interference with the performance of a contract lies even though the contract interfered with is terminable at the will of the parties." Yaindl v. Ingersoll-Rand Co., 422 A.2d 611, 618 n.6 (Pa. Super. 1980). Although this was not a holding of the case, the court reached the same conclusion when the issue was directly presented in Curran v. Children's Service Center of Wyoming County, Inc., 578 A.2d 8, 13 (Pa. Super. 1990), appeal denied, 585 A.2d 468 (Pa. 1991).

Then in 1998, a different panel of the Superior Court reached the opposite conclusion. In Hennessey v. Santiago, 708 A.2d 1269 (Pa. Super. 1998), the court concluded that the language in footnote 6 of Yaindl was dicta (because it was not necessary to the holding) and indicated that the plaintiff brought no cases to the court's attention where this doctrine has extended to the ambit of at-will employment. "Thus, we are constrained to hold that an action for intentional interference with performance of a contract in the employment context applies only to interference with a prospective employment relationship whether at-will or not, not a presently existing at-will employment relationship." Id. at 1278-79. The court in Hennessey did not cite the Curran case, did not address the Restatement or the comments thereto and did not otherwise explain its decision.[3]

---

[3] Moreover, the case that Hennessey relied upon to define the elements of a tortious interference with contractual relations claim expressly noted that Pennsylvania courts have "traditionally applied the Restatement (Second) of Torts in reviewing claims for intentional interference with

8

In a more recent case, two judges of a Superior Court panel indicated that the court was "constrained" to follow Hennessey unless and until it is overturned by an en banc panel of the Superior Court or a decision of the Pennsylvania Supreme Court. Haun v. Community Health Sys., Inc., 14 A.3d 120, 125 & n.1 (Pa. Super. 2011). The majority also concluded that the language from both Yaindl and Curran was dicta. However, Judge Mundy dissented, stating that "different panels of this Court have made contradictory rulings regarding a plaintiff's ability to bring an action for intentional interference with a contractual relationship in an at-will employment context." Id. at 126 (Mundy, J., dissenting). Judge Mundy disagreed with the majority's characterization of the language in Curran as dicta, observing that the court had to have addressed the issue of at-will employee's ability to bring a claim for tortious interference with contractual relations in order to reach a subsequent issue presented in the case. Judge Mundy also addressed the application of the Restatement § 766 comment g, an issue he noted the court in Hennessey failed to address. He noted that "the Hennessey decision not only contradicts a prior panel of this Court [in Curran], but the decision also commits the jurisprudential error which our Supreme Court has explicitly denounced. In departing from Comment g, the Hennessey decision enunciates a new precept of law." Id. at 127.

Pennsylvania Federal Court Decisions

Thus, the most that can be said concerning the Pennsylvania Superior Court decisions in this area is that they have "ruled inconsistently on the subject." White v. Brommer, 747 F. Supp. 2d 447, 469 (E.D. Pa. 2010). In White, Judge Gardner reviewed Yaindl, Curran and Hennessey, as well as decisions by the United States District Court for the Eastern District of Pennsylvania, which are also divided. Id. at 471 (citing cases). He concluded that:

---

contractual relations." Triffin v. Janssen, 626 A.2d 571, 574 n.4 (Pa. Super. 1993), appeal denied, 639 A.2d 32 (Pa. 1994), cited in Hennessey, 708 A.2d at 1278.

9

> I find the reasoning, and thus the predictions, in Brooks, McClease, and Gallas to be persuasive. Each Opinion discusses the deficiencies of the reasoning in Hennessy—specifically the failure to adequately address Yaindl and Curran as prior, contrary authority, and the failure to discuss the Supreme Court of Pennsylvania's well-recognized adoption of Section 766 of the Restatement (Second) of Torts in construing tortious interference with contract claims. See Brooks [v. Systems Mfg. Corp.], 2004 WL 2028755, at *6 [E.D. Pa. Sept. 10, 2004)]; McClease [v. R.R. Donnelly & Sons Co.], 226 F.Supp.2d [695,] 704 n.11 [(E.D. Pa. 2002)]; Gallas [v. Supreme Court of Pa.], 1998 U.S. Dist. LEXIS 14172 at *9–14 [(E.D. Pa. Aug. 25, 1998)].
>
> In sum, I predict that the Supreme Court of Pennsylvania will recognize a cause of action for tortious interference with an existing, at-will employment relationship for the following reasons: (1) the Supreme Court of Pennsylvania has recognized and does rely on the Restatement (Second) of Torts § 766 in construing tortious interference claims; (2) Comments b. and g. of Section 766 of the Restatement support recognition of plaintiff's claim; (3) Hennessy concedes that a cause of action exists for tortious interference with a prospective, at-will employment relationship. Accordingly, it would be logically inconsistent to protect prospective, at-will employment from third-party interference but not to protect existing, at-will employment relationships from such interference; and (4) Eastern District Courts in well-reasoned opinions in Brooks, McClease and Gallas have engaged in the predictive analysis required by the Third Circuit … and have concluded that the Supreme Court of Pennsylvania is likely to reject Hennessy and permit a cause of action under these circumstances.

Id. at 471-72. Judge Gardner also found noteworthy a pre-Hennessey case in which Judge Weber responded to the argument that an at-will employee could not state a tortious interference with contractual relations claim as follows:

> The argument is ingenious but specious. Plaintiff had a contractual relationship for employment, albeit terminable at-will. If [the defendants] intentionally caused [plaintiff's employer] to terminate that contract ... the tort claim has been established. Though the at-will doctrine protects the employer from contractual liability, it offers no comfort to a third party tortfeasor whose wrongful conduct interferes with the employment relationship. The policies which sustain the at-will doctrine, whatever their wisdom or lack of it, are not intended to benefit a party apart from the employment relationship.

Id. at 472 n.62 (quoting Beyda v. USAir, Inc., 697 F. Supp. 1394, 1398 (W.D. Pa. 1988)).

In this Court, there is no division of opinion. In addition to Judge Weber's conclusion in Beyda, two district judges have found the analysis in Curran persuasive. See Loving v. Borough

10

of East McKeesport, 2005 WL 3560661, at *7 (W.D. Pa. Dec. 29, 2005) (McVerry, J.); <u>Kiely v. University of Pittsburgh Med. Ctr.</u>, 2000 WL 262580, at *10 (W.D. Pa. Jan. 20, 2000) (Ambrose, J.)  Moreover, Judge Gibson has found that "it is clear that § 766 contemplates that at-will contracts can be the subject of the tort of tortious interference with a contractual relationship." <u>Keefer v. Durkos</u>, 371 F. Supp. 2d 686, 699 (W.D. Pa. 2005) (Gibson, J.).  Interestingly, Judge Gibson did not refer to any Pennsylvania cases on the topic, but instead reached this conclusion by applying Restatement § 766 and comment g.

<u>Other Jurisdictions Discussing the Issue</u>

A summary of case law on this issue states that: "Protection will be extended by most courts to contracts which are terminable at will."  Altman, Louis and Pollack, Malla, <u>Callman on Unfair Competition, Trademarks and Monopolies</u> (4th ed.), § 9:12 n.13 (database updated April 2012).  Based on this compilation, it would appear that at least 24 jurisdictions recognize a plaintiff's ability to state a claim of tortious interference with an at-will contract, while approximately 12 or so do not.

This Court predicts that the Pennsylvania Supreme Court would recognize a cause of action for tortious interference with an existing, at-will employment relationship for the following reasons: 1) the Pennsylvania Supreme Court has recognized and does rely on the Restatement (Second) of Torts § 766 in construing tortious interference claims; 2) Comments b and g of § 766 of the Restatement support recognition of this claim; 3) the Pennsylvania Superior Court in <u>Curran</u> recognized this kind of claim and the Pennsylvania Supreme Court denied review; 4) <u>Hennessy</u>, which holds that no such claim may be maintained, fails to discuss <u>Curran</u>, the Restatement or its comments and concedes that a cause of action exists for tortious interference with a prospective, at-will employment relationship, yet fails to explain why no

11

cause of action may be maintained for an existing, at-will employment relationship; 5) Haun compounds the errors of Hennessy by following it without any further discussion and by mischaracterizing a holding of Curran as dicta[4]; 6) as summarized in White, courts in well-reasoned decisions in the Eastern District of Pennsylvania have engaged in the predictive analysis required by the Third Circuit and have concluded that the Supreme Court of Pennsylvania is likely to reject Hennessy and permit a cause of action under these circumstances, and decisions by three judges of this Court have followed Curran or determined that such a claim is consistent with the Restatement; and 7) a majority of state courts addressing this issue have recognized this kind of claim.

For these reasons, it is recommended that the motion to dismiss Count I of the complaint and to strike Plaintiffs' claims for attorney's fees (ECF No. 5), filed on behalf of Defendant Range Resources-Appalachia, LLC, be granted with respect to the request to strike Plaintiffs' claims for attorney's fees and denied in all other respects.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections within the time specified in the Notice of Electronic Filing. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will waive the right of appeal.

                                                  Respectfully submitted,

                                                  s/Robert C. Mitchell
                                                  ROBERT C. MITCHELL
                                                  United States Magistrate Judge

Dated:  May 9, 2012

---

[4] Range Resources also argues that the language in Curran is dicta. (ECF No. 16 at 2 & n.1.)