IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RUGH A. MASON and SHERRY L. MASON, husband and wife,<br>          Plaintiffs,<br><br>vs<br><br>RANGE RESOURCES-APPALACHIA, LLC and NISOURCE ENERGY VENTURES, LLC,<br>          Defendants. | Civil Action No. 12-369<br>Judge Conti<br>Magistrate Judge Mitchell |

REPORT AND RECOMMENDATION

I.     Recommendation

It is respectfully recommended that the partial motion for summary judgment filed on behalf of defendant Range Resources-Appalachia, LLC (ECF No. 40) be denied.

II.     Report

Plaintiffs, Rugh A. Mason and his wife, Sherry L. Mason, bring this action against Defendants, Range Resources-Appalachia, LLC ("Range Resources") and NiSource Energy Ventures, LLC ("NEVCO") arising out of the attempts by Defendants to obtain production rights for the natural gas located under their land. Specifically, Plaintiffs seek a declaration that they (and not the Defendants) own all drilling and production rights to the natural gas associated with their land and they allege that Range Resources tortiously interfered with Rugh Mason's relationship with his employer after he refused to amend and ratify an old gas lease or enter into a new lease with Range Resources for gas production rights.

Presently pending before the Court is a partial motion for summary judgment, filed by Range Resources. Specifically, Range Resources seeks to dismiss the tortious interference with contractual relations claim alleged in Count I of the Complaint. For the reasons that follow, the motion should be denied.

Facts

"The Masons own approximately 151 acres of land located at 99 Buck Run Road, Claysville, Donegal Township, Washington County, Pennsylvania (the "Masons' Land")..." (Compl. ¶ 5; Range Resources Answer and Affirmative Defenses ("Answer") ¶ 5.)[1] "The Masons' Land is located above an underground storage area and buffer zone that is known as the Donegal Storage Field." (Compl. ¶ 6; Answer ¶ 6.) "In 1961, the Masons' predecessors in title ... made a gas lease for the Masons' Land in favor of the Manufacturers Light and Heat Company (the "1961 Lease")...." (Compl. ¶ 7 & Ex. A; Answer ¶ 7.) "Under the terms of the 1961 Lease, the Manufacturers Light and Heat Company obtained the right to store gas under the Masons' Land. The 1961 Lease also granted, under specific terms, the lessee the right to drill for and produce oil and gas." (Compl. ¶ 8 & Ex. A; Answer ¶ 8.)

"Columbia Gas became the successor to The Manufacturers Light and Heat Company as the lessee under the 1961 Lease." (Compl. ¶ 9; Answer ¶ 9.) "Columbia Gas in 2005 subleased to Range Resources … any gas production rights that it then had in the Donegal Storage Field, including any gas production rights that may have existed under the 1961 Lease." (Compl. ¶ 13 & Ex. B; Answer ¶ 13.)

"From time to time Range Resources, directly or indirectly, has asked the Masons either to amend and ratify the 1961 Lease or to re-lease their land to Range Resources." (Compl. ¶ 24; Answer ¶ 24.) However:

> the Masons have refused to agree to modify the 1961 Lease on the terms demanded by Range [Resources]. At times in 2011, Mr. Mason also told other landowners in the Donegal Storage Field that the old gas storage leases in his view did not hold the production rights and urged other landowners not to enter into the lease modifications sought by Range Resources.

---

[1] Notice of Removal (ECF No. 1) Ex. A; ECF No. 24.

(Compl. ¶ 24; Answer ¶ 24.)

> Range Resources has solicited other owners of land in the Donegal Storage Field to modify or renew the gas production rights associated originally with the old storage leases. Mr. Mason informed such landowners that the gas production rights under the old gas storage leases might not be valid and that the landowners could likely obtain better terms for their gas production rights. Range Resources did, however, manage to obtain lease modifications concerning the old storage leases from some landowners, and pursuant to such modifications it has drilled for Marcellus shale gas on such lands.

(Compl. ¶ 25; Answer ¶ 25.)

"[Mr.] Mason was employed by Advanced Oilfield Services, Inc., [which] provides gas well services in connection with drilling Marcellus shale gas wells in southwestern Pennsylvania. In particular, Advanced Oilfield Services provides gas well services to Range Resources at gas wells drilled by Range Resources in and near the Donegal Storage Field." (Compl. ¶ 26; Answer ¶ 26.) "As an Advances Oilfield Services' employee, Mr. Mason was a roustabout with job safety responsibilities at various Range Resources gas well drill sites in the vicinity of the Donegal Storage Field. Advanced Oilfield Services paid Mason an hourly wage and provided him the use of a company-supplied vehicle in connection with his employment." (Compl. ¶ 27; Answer ¶ 27.)

> When Mr. Mason reported for work at Advanced Oilfield Services on January 3, 2012, Advanced Oilfield Services informed him that Range [Resources] had learned of Mason's employment and had ordered Advanced Oilfield Services not to allow him to have access to Range Resources' gas well sites. As a result, Advanced Oilfield Services offered a significant demotion to Mr. Mason, which he did not accept, and Advanced Oilfield Services terminated Mr. Mason's employment on that date.

(Compl. ¶ 29; Answer ¶ 29.)[2] Plaintiffs allege that this action was taken:

---

[2] Range Resources indicates that it "does not dispute" this averment of the Complaint (although it responded "denied" in its Answer) for the limited purpose of advancing its motion for summary judgment and that it reserves the right to dispute this fact in any further proceedings in this case. (ECF No. 42 at 1 n.1.)

> without privilege or justification and with the specific intent to harm his employment relationship with Advanced [Oilfield Services]. Additionally, Range Resources ordered Advanced Oilfield Services to terminate Mr. Mason's employment as a form of economic oppression intended to punish him for refusing Range Resources' demand that the Masons modify, amend and ratify the 1961 Lease, for attempting to inform other landowners that they might have been able to obtain better terms than those offered by Range Resources, and to force the Masons to accept such offer.

(Compl. ¶ 30.)

Procedural History

On February 27, 2012, Plaintiffs filed a complaint in the Court of Common Pleas of Washington County, Pennsylvania. Count I alleges that Range Resources tortiously interfered with Rugh Mason's relationship with his employer after he refused to amend and ratify the 1961 gas lease or to lease new gas production rights to Range Resources. Count II seeks a declaration that Plaintiffs own all drilling and production rights to the natural gas associated with their land and that no such rights are possessed by Range Resources or NEVCO.

On March 26, 2012, Defendants filed a notice of removal, asserting jurisdiction based on diversity of citizenship in that Plaintiffs are Pennsylvania citizens; Range Resources is a limited liability company whose members are Range Resources-Pine Mountain, Inc. and Range Production Co., both Delaware corporations with a principal place of business in Fort Worth, Texas; NEVCO is a Delaware limited liability company whose sole member is Columbia Energy Group, a Delaware corporation with a principal place of business in Columbus, Ohio; and the amount in controversy, excluding interest and costs, exceeds the sum of $75,000.00 (Notice of Removal ¶¶ 10-21 & Exs. C, D, E.)

On July 29, 2013, Range Resources filed a motion for partial summary judgment (ECF No. 40). Plaintiffs filed their opposition on August 29, 2013 (ECF No. 44) and Range Resources filed a reply brief on September 6, 2013 (ECF No. 45).

4

Standard of Review

As amended effective December 1, 2010, the Federal Rules of Civil Procedure provide that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In following this directive, a court must take the facts in the light most favorable to the non-moving party, and must draw all reasonable inferences and resolve all doubts in that party's favor. Hugh v. Butler County Family YMCA, 418 F.3d 265, 266 (3d Cir. 2005); Doe v. County of Centre, Pa., 242 F.3d 437, 446 (3d Cir. 2001).

Range Resources argues that Count I of the Complaint should be dismissed because Plaintiffs have not come forward with admissible evidence capable of proving that it acted for the specific purpose of causing harm to him or that its actions were improper, two necessary elements for a claim of tortious interference with contractual relations.[3] Plaintiffs respond that

---

[3] On April 2, 2012, Range Resources filed a motion to dismiss Count I of the Complaint on the

5

their evidence, including Mr. Mason's own account of what happened on January 3, 2012, is sufficient to maintain this claim.

### Tortious Interference with Contractual Relations

The Pennsylvania Supreme Court has adopted the Restatement (Second) of Torts § 766 for the elements of a claim for tortious interference with existing contractual relations, and § 767, which explains what constitutes improper conduct for purposes of the tort. See Adler, Barish, Daniels, Levin and Creskoff v. Epstein, 393 A.2d 1175, 1183-84 (Pa. 1978). Thus, the necessary elements for a cause of action for tortious interference with contractual relations are as follows:

> (1) the existence of a contractual relationship between the complainant and a third party;
>
> (2) an intent on the part of the defendant to harm the plaintiff by interfering with that contractual relationship;
>
> (3) the absence of privilege or justification on the part of the defendant; and
>
> (4) the occasioning of actual damage as a result of defendant's conduct.

Phillips v. Selig, 959 A.2d 420, 429 (Pa. Super. 2008) (quoting Restatement § 766). The second element requires proof that the defendant acted "for the specific purpose of causing harm to the plaintiff." Id. (quoting Glenn v. Point Park College, 272 A.2d 895, 899 (Pa. 1971)). The third element requires proof that the defendant's actions were improper under the circumstances presented, which as noted, is determined in accordance with the factors listed in § 767:

> In determining whether an actor's conduct in intentionally interfering with a contract ... is improper or not, consideration is given to the following factors: (a) the nature of the actor's conduct; (b) the actor's motive; (c) the interests of the others with which the actor's conduct interferes; (d) the interests sought to be

---

ground that an at-will employee such as Mr. Mason cannot state a claim for tortious interference with contractual relations (ECF No. 5). On June 11, 2012, an order was entered denying this motion (ECF No. 22), adopting a Report and Recommendation that was filed on May 9, 2012 (ECF No. 18) and predicting that the Pennsylvania Supreme Court would not accept this argument.

advanced by the actor; (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other; (f) the proximity or remoteness of the actor's conduct to the interference; and (g) the relations between the parties.

Id. at 429-30 (quoting Restatement § 767). These two factors are closely related. The court further observed that comment b to § 767 is also instructive:

> The issue in each case is whether the interference is improper or not under the circumstances; whether, upon a consideration of the relative significance of the factors involved, the conduct should be permitted without liability, despite its effect of harm to another. The decision therefore depends upon a judgment and choice of values in each situation. This Section states the important factors to be weighed against each other and balanced in arriving at a judgment; but it does not exhaust the list of possible factors.

Restatement (Second) of Torts § 767, cmt. b (1979). The court stated that:

> In making this "choice of values" in individual cases, our Supreme Court has advised that when the purpose of the defendant's conduct is, in whole or in part, to protect a legitimate right or interest that conflicts with the interests of the plaintiff, "a line must be drawn and the interests evaluated." Glenn, 441 Pa. at 482, 272 A.2d at 899. Although this evaluation of interests is not always susceptible of "precise definition," it is clear that the central inquiry is whether the defendant's conduct is "sanctioned by the 'rules of the game' which society has adopted." Id.; Triffin [v. Janssen], 626 A.2d [571,] 575 [(Pa. Super. 1993)] (refusal to consent to withdrawal of opposing party's attorney was not improper because conduct was consistent with the rules of court); Small [v. Juniata College], 682 A.2d [350,] 354 [(Pa. Super. 1997)] (players on football team did not act improperly by voicing negative opinions of coach to college administration, which, upon investigation, discharged him, since in the academic world students are encouraged to voice their opinions).

959 A.2d at 430.

In Phillips, the court held that a law firm representing a new union of umpires did not tortiously interfere with existing contractual relations between the former union and its attorney because an attorney "coveting" another's business and taking steps to procure that business for himself is not improper as the law acknowledges a party's privilege to engage in business and compete with others, including inducing third parties to do their business with him so long as the

7

party does not engage in improper conduct such as coercion or misrepresentation. Id. at 431-33. It further held that the umpires who allegedly attacked the law firm's performance and competence in the press and to fellow union members (and thus led to a vote to decertify the union) did not violate the "rules of the game" because they were free to express their own personal opinions and they made no threats or acts of coercion. Id. at 435-36.

Range Resources cites the Phillips case repeatedly in its brief. However, it has not explained how the case has any bearing on the completely dissimilar facts of this case. Range Resources was not a competitor to Advanced Oilfield Services and Mason's termination cannot in any way be described as relating to the issue of competition. Rather, Plaintiff has argued that Range Resources' motive in inducing Advanced Oilfield Services to terminate his employment was an improper one—namely to punish him for opposing its attempts to obtain drilling rights on his land.

Range Resources argues that Mason has no evidence to support his contentions that it acted with the intent to harm him or that it lacked a privilege or justification for such interference. It contends that:

> Mr. Mason has no evidence to suggest that Range did anything for the express purpose of "punishing" Mr. Mason or to force him to sign an amendment to his lease. In fact, Mr. Mason has no evidence that Range's construction and drilling personnel who interacted with [Advanced Oilfield Services] communicated with Range's land department concerning Mr. Mason. No evidence suggests that Range's construction and drilling personnel even knew Mr. Mason owned any oil and gas rights.
>
> Indeed, if Range's construction and drilling personnel did know about Mr. Mason's disagreements with Range's land department, they would have been perfectly justified in prohibiting Mr. Mason, a disgruntled landowner, from accessing, let alone working on, its well sites—places where a safe work environment is absolutely critical.
>
> Ultimately, because the record is devoid of evidence capable of proving that Range restricted Mr. Mason from its drill sites in order to harm him rather

8

than for some other legitimate reason and that Range acted without privilege[] or justification, summary judgment must be granted in favor of Range and against Mr. Mason as to Count I of the Complaint.

(ECF No. 41 at7.)

In his pro se response to Range Resources' motion, Mr. Mason states as follows:

The facts of the case as stated in the complaint confirm that I was employed by Advanced Oilfield Services, Inc. (AOSI) for three months from October 11, 2011 to January 4, 2012. During this entire time of employment at AOSI my employer was completely satisfied with my job performance. I never had any complaints about my job performance by any person from any company on the job site. I was always on time or early when reporting for work in the morning. I had use of a company vehicle with a fuel purchase credit card. This vehicle was for my daily transportation to and from worksites and my home. I had good prospects for advancement within the company which was directly stated to me by company personnel, and they also demonstrated this by their investment in me by their in-house training program, use of a company vehicle, fuel card, and job safety responsibilities from the beginning of my employment in the field. Other than me, only supervisory personnel at AOSI were responsible for full time use of a company vehicle. I had an at will employment contract with AOSI, however that contract did not extend to any other entity. All was well with my employment at AOSI until Wednesday, January 4, 2012 at approximately 6:45 A.M. My work Shift started at 6:30 A.M., but at 6:45 I was standing by the desk of Scott Clark, Field Superintendent, who was my immediate supervisor. At that time Scott received a phone call on his cell phone. I waited while Scott took the call. When the call ended Scott tossed the phone onto the desk, look[ed] up at me and said "they don't want you on the pads." This was quite embarrassing when he said this in the presence of my co-workers. Scott told me to go home and wait for his call because he had to talk with the AOSI Operations Manager., Troy Gehring to determine my fate with the company. It is important to add at this point, that on 1-4-12, I was on time for work, I had my lunch and I was fully prepared to complete my ten hour shift. It was only because of that phone call that I was sent home [without] any justification. Later that day at 3:00 P.M., Scott Clark called and AOSI did offer me another position, however I lost the use of the company vehicle with nothing else offered. Another employee of AOSI, Beckie Hillam who was the Human Resources Administrator confirmed to me that it was Range that called Scott Clark and interfered with my job with AOSI. I was in touch with Beckie because I had to return my gear, clothing, and vehicle to her. My extensive history of interaction with Range Resources LLC personnel since 2007 has been well documented in the complaint of this case and confirmed by the defendants. This interaction with Range was mostly with the land department about the oil and gas lease(s) related to my farm in Claysville, PA. My former attorney wrote letters on behalf of me and my wife about these leases to employees of Range Resources and also employees of Columbia Gas (NiSource).

9

> The contacts at these companies who received these letters included upper management, land department management, and landman. The interference by Range Resources LLC with my employment was not an isolated incident. For Mr. Witzel to coin the phrase that he coined on page 7 of document 41 about me as a disgruntled landowner and therefore Range Resources personnel can feel justified and free to abuse me however they choose to – is outrageous. Additionally, for Mr. Witzel to infer that I would in some way intentionally create an unsafe work environment on the well pad because of an oil & gas lease is just another prime example of the unethical depths to which he and his clients are capable of going for the purpose of discrediting any person. There never was a complaint by any person, from any company about my job performance at any time during my employment with AOSI. Additionally, my job duties and responsibilities were focused on job safety of the workers on the well pads. This job safety information which I compiled daily was described to, reviewed by, and signed off by each person, of every status, who entered the well pads. This was my duty and responsibility to help keep the workers safe. Because Range Resources—Appalachia LLC, used their ploy of economic oppression against me for their profit gain, Range Resources—Appalachia LLC is the only factor which caused, and created the many financial losses, among other hardships, which I have incurred since they interfered with my employment at Advanced Oilfield Services, Inc.

(ECF No. 44 at 4-6.)[4]

As an initial matter, it is important to take note of what the "evidence" consists of in this case. As Range Resources predicts in its reply brief (ECF No. 45 at 2 n.1), this Court should consider the factual assertions contained in Plaintiffs' Response in Opposition to its motion even though they are not in the form of an affidavit, because the response was signed by Mr. Mason, a pro se litigant. On the other hand, it would be inappropriate for the Court to consider as "evidence" an argument made by Range Resources in its brief, namely that, if its construction and drilling personnel knew about Mr. Mason's disagreement with its land department, such personnel "would have been perfectly justified in prohibiting Mr. Mason, a disgruntled landowner, from accessing, let along working on, its well sites…." Range Resources has

---

[4] Plaintiffs had counsel when this case was filed and for some time thereafter. However, after an unsuccessful settlement conference on November 17, 2012, counsel filed a motion to withdraw which was granted on December 12, 2012. Since that time, Plaintiffs have proceeded pro se.

submitted no evidence that its actual motive in directing Advanced Oilfield Services to prohibit Mr. Mason from accessing its well sites was concern over the safety of those well sites.

Range Resources argues that Mason has not met his burden, but as the moving party on a motion for summary judgment, it is Range Resources' burden to show the non-existence of a genuine issue of material fact. In addition, because the critical issue in this case is Range Resources' motive for its actions, this presents the quintessential issue to be submitted to the trier of fact, not resolved by this Court on a motion for summary judgment. See King v. Sioux City Radiological Group, P.C., 985 F. Supp. 869, 885-86 (N.D. Iowa 1997) (when doctors induced hospital to terminate director of radiology's employment, there were genuine issues of material fact as to whether their motives were proper, such as to alleviate disharmony in the department, or improper, such as dislike of him unrelated to any business concern, so summary judgment was denied); Wells Fargo Bank v. Arizona Laborers, Teamsters & Cement Masons Local No. 395, 38 P.3d 12, 32 (Ariz. 2002) (whether a bank which submitted false financial statements intended that its conduct operate to disadvantage a fund in order to obtain payment of a loan required a jury assessment of the bank's intent).

For these reasons, it is recommended that the partial motion for summary judgment submitted on behalf of defendant Range Resources-Appalachia, LLC be denied.

Litigants who seek to challenge this Report and Recommendation must seek review by the district judge by filing objections by October 9, 2013. Any party opposing the objections shall file a response by October 23, 2013. Failure to file timely objections will waive the right of appeal.

                              Respectfully submitted,

s/Robert C. Mitchell
										ROBERT C. MITCHELL
										United States Magistrate Judge
Dated: September 25, 2013